STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. BARBARA ANN HARRIS, DEFENDANT-RESPONDENT.

Argued February 10, 1976—Decided July 13, 1976.

*Mr. Benjamin D. Leibowitz,* Deputy Attorney General, argued the cause for appellant (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Robert A. Rubenfeld,* Deputy Attorney General, of counsel and on the brief).

*Mr. Allen L. Shulman,* Assistant Deputy Public Defender, argued the cause for respondent (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

The opinion of the Court was delivered by

HUGHES, C. J. ▪ The defendant was indicted and tried for violation of *N. J. S. A.* 2A:111-2, in that she fraudulently obtained the sum of $1,032 from the welfare authorities by concealing the fact of certain employment earnings. The amount received was stoutly contested at trial. The court properly charged the jury that precision in determining the amount involved was unnecessary to a finding of guilt, as follows:

It is not essential that you find the specific amounts actually received as long as you find that some amount was received by the defendant from the Welfare Board that she was not entitled to receive * * *.

The jury verdict of guilt, therefore, was not efficacious in settling the amount involved in the fraudulent conduct.

The trial judge imposed a short custodial sentence but suspended its execution and placed defendant on probation for a period of three years, which he had authority to do under the statute, *N. J. S. A.* 2A:168-1. As a condition of probation, he ordered restitution by the defendant to the welfare board of the sum fraudulently obtained, under the colorable authority of the statute, *N. J. S. A.* 2A:168-2. That statute permits a sentencing judge to impose as a condition of probation that the defendant

shall make reparation or restitution to the aggrieved parties for the damage or loss caused by [the] offense * * *.

■ The particular amount specified by the court's final order for restitution was $1,012.[1] The inconsequential variance from the amount charged in the indictment related to a detail in computation not here relevant. Not only was such lesser amount not admitted by defendant, but it was disputed strongly at sentencing, as it had been at trial, on

---

[1]Either as recommended by the probation department or gleaned from the judge's recollection of the testimony at trial before him, or perhaps both. The sentencing record supports both possibilities for the judge said, *inter alia*, — "the restitution will be in such amounts as the Probation Officer will determine." This referred not to the *quantum* of restitution but to the periodic payments to be made to the probation department to satisfy it. On the same occasion the judge said: "The indictment was $1,032 but the truth was $1,012. We will take the lower amount and it will be paid in such amounts as the Probation Officer will direct you to pay * * *." Although the judge was eminently fair in according the fullest opportunity to defendant and her attorney to address the matter of sentence, we consider that the colloquy did not meet the standards of summary procedure which we described in *State in the Interest of D.G.W.*, 70 *N. J.* 488 (1976), as essential for fixing the extent and terms of restitution as a probation condition. As we held in *D.G.W.*, it is the non-delegable responsibility of the judge to fix the extent and terms of restitution.

apparently substantial grounds[2] noted by the Appellate Division. The latter, on appeal, affirmed the conviction but vacated so much of the trial court's judgment as ordered restitution, on the basis that due process had been denied the defendant in the determination of the *quantum* of restitution.

We granted certification on the petition of the State, 68 *N. J.* 145 (1975), to review the validity of the restitution order.

## I.

Before meeting the essential question on this appeal we hasten to deal with an observation made in the opinion of the Appellate Division which might be a source of later confusion. In noting the State's concession that some of the trial testimony as to the scope of fraud, and the amount involved, may have been confusing, and rejecting the invitation to exercise its original jurisdiction (*R.* 2:10–5) to resolve discrepancies, the Appellate Division stated "if restitution is to be pursued, it may be done civilly." In the context of other parts of its opinion, the Appellate Division did not intend thus to negate the legitimacy of restitution, under appropriate safeguards, as a probationary tool in the criminal process, and said as much. But the quoted language in isolation may be misunderstood as recommending as a preferable recourse the recovery of restitution by way of damages in a separate civil action. As will be seen, we are of opinion that restitution is not only an appropriate but frequently a salutary technique in the criminal process, and in the purposes of the probation system contemplated by the statute.

---

[2]The record indicates that the dispute, or confusion, arose because the probation department had been collecting and transmitting to the welfare board for payment to defendant certain sums of child support from defendant's former husband. These monies may have become intermingled or confused with welfare funds paid out to defendant. It is not necessary to resolve this issue here but we notice its apparent substantiality.

■ And, necessarily without prejudice to the right of any aggrieved party to seek to recover damages in a civil action (because not a party to the criminal disposition), we regard it as preferable in the ordinary case, where feasible, to provide for restitution within the probation context. This for two main and coalescing reasons. One may be termed the "justice" factor. The court which orders restitution acts in the interest of repairing the harm done the aggrieved party. In meting out substantial justice in this fashion, the court is even more importantly motivated by another reason, which may be termed the "rehabilitation" factor — the predominant rehabilitative aspect of probationary restitution.

We therefore agree with the Appellate Division that:

Restitution in a proper case may ofttimes be a compelling reminder of the wrong done and meaningfully contribute to the rehabilitation process.

■ As we have recently held in *State in the Interest of D. G. W.,* 70 *N. J.* 488 (1976), the significance of restitution as a condition of probation thus extends beyond the concept of simple justice to one aggrieved and entitled to restitution of that unlawfully taken or reparation for loss unlawfully inflicted. Just as importantly, probation in general and, *a fortiori,* restitution as a condition thereof are regarded as rehabilitative in nature. This is essentially recognized in the confluence of statutes, *N. J. S. A.* 2A:4–61, *N. J. S. A.* 2A:168–1, 2; the rules of court, *R.* 3:21–7, *R.* 5:9–9; case law, *see, e. g., P. R. v. State,* 133 *Ga. App.* 346, 210 *S. E.* 2d 839, 841 (Ct. App. 1974); *In re Buehrer,* 50 *N. J.* 501, 509 (1967); *Adamo v. McCorkle,* 13 *N. J.* 561, 563 (1953), *cert.* den., 347 *U. S.* 928, 74 *S. Ct.* 531, 98 *L. Ed.* 1080 (1954); *State v. Moretti,* 50 *N. J. Super.* 223, 231–32 (App. Div. 1958), and professional commentary. Some of the latter illuminate the reasons behind such concept:

There would seem to be sound reasons for the stipulation [i. e., restitution] in given cases. It is not only that aggrieved persons are recompensed. Unlike a fine as a condition of probation, or service of a jail term prior to supervision, restitution has an understandable logic. It is directly related to the offense and the attitude of the offender. There is a reality involved: society does not sanction fraud or other forms of theft; it does not approve injury inflicted upon an innocent person. Society wants to make sure the offender realizes the enormity of his conduct, and it asks him to demonstrate this by making amends to the individual most affected by the defendant's depredations.

\*   \*   \*   \*   \*   \*   \*   \*

Restitution may have a positive casework connotation. It offers the individual something within reason that he can do here and now, within the limits of his ability to demonstrate to *himself* that he is changing. A fine is punitive. A jail sentence is retributive. But restitution makes sense. It is every man's obligation to meet responsibilities of this sort in civil life. [*D. Dressler, Practice and Theory of Probation and Parole* 176–77 (1959) (emphasis in original)].

Other commentary illustrates some limitations:

The restitution or reparation required may not go beyond the actual loss or damage as established in the prosecution and must be directly related to the crime. Restitution serves the purposes of rehabilitation, if used to support a healthy attitude by the offender. It also serves to restore the loss (although partially) to the victim of the crime. \* \* \* When reparation is a condition of probation, it is part of the defendant's rehabilitative effort, not a sentence. [*S. Rubin, The Law of Criminal Correction* 200–01 (1963) (footnotes omitted)].

In this posture we have no difficulty in overruling at once, as did the Appellate Division, the defendant's suggestion that "restitution cannot be ordered in a criminal matter." We also agree that there was no error in the trial on the indictment itself.

## II.

In vacating so much of the sentencing court's judgment as ordered restitution, the Appellate Division affirmed the judgment as so modified, rather than remanding (the course we followed in *D.G.W.*) for proceedings to rectify that de-

ficiency in the sentence. That error was implicit in the lack of due process in fixing the extent and terms of the restitution order. We agree with the basic Appellate Division holding that:

The imposition of restitution here as a condition of probation lacked warrant in the record.

Since the conclusion rested upon the lack of due process, in the absence of at least a summary procedure such as we later outlined in *D.G.W.*, the ordinary course would be to remand for a correction of such deficiency. The Attorney General quite candidly concedes in the State's brief the relevance of such process in his alternative suggestion that, if this Court does not validate the restitution order, it should remand for correction of such deficiency:

\* \* \* [T]he State believes some type of hearing should be granted where a defendant challenges the amount of restitution ordered as a condition of probation.

■ In approving the decision to modify the sentence rather than remand it for a summary hearing on the restitution terms, we particularly notice the circumstances in which the restitution order was imposed. As we mentioned in *D.G.W.*, and repeat here, the sentencing judge must be mindful that in imposing the sanctions of the law consideration should be given to the offender as well as the offense involved. *State v. Ward*, 57 *N. J.* 75, 82 (1970); *State v. Ivan*, 33 *N. J.* 197, 201–02 (1960).

In *Ivan*, Chief Justice Weintraub projected two types of offense as illustrative of this rule. One, having "strong emotional roots or [being] an isolated event unassociated with a pressing public problem" (such as organized crime), he thought would justify "greater emphasis upon the circumstances of the individual offender." 33 *N. J.* at 202. The type of offense at the other end of the scale is thus described in *Ivan*:

On the other hand, if the crime is a calculated one and part of a widespread criminal skein, the needs of society may dictate that the punishment more nearly fit the offense than the offender. There the sentencing judge may conclude he should give priority to punishment as a deterrence to others and as an aid to law enforcement. The doubts that may beset the deterrent effect of punishment when the crime is steeped in emotional pressures recede sharply when the motivation is pecuniary and the criminal event is part of a calculated "business" venture. * * *

Here we are dealing with organized crime. The offense is in no sense an isolated excursion beyond the pale of the law induced by engulfing circumstances. * * * [W]hen the offense serves the interests of a widespread conspiracy, it would be a mistake to think of the defendant as an isolated figure. [*Id.*]

Having this notion of values in mind, and with appropriate deference to the discretion exercised by a sentencing judge, we consider the circumstances apparent in the record here as relevant to the ordering of restitution in this case.

At the time of sentencing, the offender, a "welfare mother," appeared in the following light on the apparently undisputed record. The presentence investigation report required by rule, *R.* 3:21-2, was before the court which also, as we have noted, heard fully from the defendant herself as well as her counsel. The offender was so described by the latter:

[A] hard working woman. She has custody and support for five children. The oldest child being fourteen, the youngest being four. In addition to being the sole parent in this household, she is holding down a full-time job, * * *.
* * * [S]he's a conscientious person. She is attempting to do the best she can in a very difficult situation.
*　　　*　　　*　　　*　　　*　　　*　　　*　　　*
The fact that she presently is receiving assistance from the Welfare Board * * * reflects the fact that there just isn't that much extra money in this household * * *. She is doing everything she can to be a responsible parent. She cares about these children. * * * This is a hard working, conscientious woman, * * *.

Believing herself facing the specter of jail, the defendant threw herself on the mercy of the court:

I guess the only thing I can possibly say is that if I have committed a crime, I didn't do it intentionally. The only thing I wanted

to do was to see a smile on my children's faces, because I had went for five years supporting those kids. I went through every court there was to go for help and it got to the place where they couldn't make the father pay me any money. It was supposed to come from Probation. * * * [H]e is almost $5,000 in arrears and there is no place else for me to turn. * * *

\* \* \* \* \* \* \* \*

I can't take it any more. I went everywhere there was for help and I've been denied and I don't know why. I'm not fighting for me. * * * I'm fighting for five lives that have a chance to live. They can't get a lawyer and fight for themselves * * *.

I don't want to be separated from my children. * * * That's all I have in this world. If you take that away, then there's nothing. * * *

If I've committed a crime, I'll pay every dime back. * * * Please don't take me away from my babies.

In imposing sentence the court stated:

* * * [Y]ou violated the criminal laws of this State and it is my duty to impose sentence.

\* \* \* \* \* \* \* \*

We want to be as fair as we can but we just can't leave you go without some punishment.

* * * Among the conditions of probation is that you restore or rather make complete restitution of $1,012. * * * I know that you have not been convicted of any other offenses. You are 31 years of age. There is a life ahead of you * * *.

■ The circumstances of this case persuade us not to remand, as we would ordinarily do. Here it would seem a futile gesture, obviously burdensome to a congested court and unjust to a severely handicapped defendant; — and only for the purpose of restitution to a welfare department which is itself partially sustaining its struggling client. The condition of restitution here, in the aspect of rehabilitation, is quite meaningless. As punishment it is unacceptable in the circumstances. We have no doubt that the court, by the sentence imposed, intended to strike a blow at "welfare fraud" as such, namely the offense and its suspected prevalence. But considering the offender and her worth to society in struggling to sustain her five children, the human cost of such deterrence in this instance is too great.

For these reasons we exercise our closely guarded and sparingly used authority, to vacate the restitution condition as being clearly excessive. *State v. Ward, supra.*

## III.

In view of the summary procedural pattern described in *D.G.W.* and for the guidance of courts which will be ordering restitution in future cases, we think we should deal with another aspect of the Appellate Division opinion. We disagree with its conclusion that the *quantum* of restitution (unless admitted) must be proven by a preponderance of evidence, as though the sum were being established in a civil suit for damages, — a plenary trial involving only formal evidence.

The sentencing process is entirely different. The requirements of due process, given notice, hearing and the other elements described in *Morrissey v. Brewer,* for instance,[3] do not extend to the fixed rule of preponderance of evidence which is characteristic of the plenary civil trial.

A requirement that the amount of damage or defalcation be proved by a preponderance of evidence misconceives the nature of the restitutionary payment. The specific amount of money received by defendant here, for instance, was not an element of the crime charged and hence need not have been proven beyond a reasonable doubt. This was recognized by both courts below. However, neither are restitutionary pay-

---

[3]In *Morrissey* the Supreme Court stated that due process required: (a) written notice of the claimed violations [relevant facts] * * *; (b) disclosure * * * of evidence * * *; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body * * * members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to evidence relied on and reasons [for acting]. [408 *U. S.* 471, 488–89, 92 *S. Ct.* 2593, 2604, 33 *L. Ed.* 2d 484, 498–99 (1972)].

ments based upon criminal conduct "damages" in the sense of civil liability. *People v. Good,* 287 *Mich.* 110, 282 *N. W.* 920, 923 (1938); *State v. Scherr,* 9 *Wis.* 2d 418, 101 *N. W.* 2d 77, 81 (1960). The ordering of restitutionary payments as a condition of probation is part of the sentencing process. "The amount and manner of payment of reasonable restitution is a matter for the judgment of the sentencing judge * * *." *People v. Gallagher,* 55 *Mich. App.* 613, 223 *N. W.* 2d 92, 96 (Ct. App. 1974).

A substantially similar issue to the one raised here by defendant was considered in *People v. Tidwell,* 33 *Ill. App.* 3d 232, 338 *N. E.* 2d 113 (Ct. App. 1975), where the defendant claimed that "the trial court erred and abused its discretion by its order directing defendant, as a condition of his probation, to pay $200 in restitution without criminal damage in that amount being proved by competent evidence * * *." 338 *N. E.* 2d at 115. The only evidence submitted as to the amount of damage was the uncorroborated statement of the victim of defendant's vandalism that repairs had cost $209. *Id.* at 117.

The court rejected the defendant's contention:

This argument overlooks the nature of the proceedings in which the trial court made its finding. The case below was not a suit to recover damages to personal property. * * * It was a misdemeanor prosecution in which the State did not have to prove any monetary damage to the property in question. * * * The question of damages related only to the court's exercise of its power to place defendant on probation. * * * And in such a proceeding, it is generally said that strict rules of evidence do not apply. * * * What the judge should hear or have presented for his consideration in such a proceeding is subject to the parameter of reasonableness; not technical rules of evidence. * * * Of course, in proceedings such as this a defendant is free to cross-examine witnesses and contradict them with other evidence. In this case, defendant did not contradict the complaining witness. [*Id.* (citations omitted)].

This approach seems correct. The amount of damage for which restitution will be ordered need not be proved by a preponderance of the evidence, *qua* evidence. Due process

is satisfied by affording the defendant a hearing on the amount of restitution, as prescribed in *D.G.W.*, and where there is a factual basis in the record to support the court's determination of the amount of restitution. The foundation for this "factual basis" should be an investigative determination of the extent of the loss by the probation department as reflected in the presentence report. *See R. Dawson, Sentencing: The Decision as to Type, Length, and Conditions of Sentence* 106 (1969). The determination of the amount of restitution, if otherwise in compliance with the due process formula of *D.G.W.*, should be accepted except in the case of abuse of discretion. *See People v. Tidwell, supra,* 33 *Ill. App.* 3d 232, 338 *N. E.* 2d at 118; *People v. Gallagher, supra,* 55 *Mich. App.* 613, 223 *N. W.* 2d at 96.

Whatever label is applied to the evidential base in the case of restitution, "sufficient facts," *Shenah v. Henderson,* 106 *Ariz.* 399, 476 *P.* 2d 854, 856 (1970); "competent evidence," *People v. Tidwell, supra,* 33 *Ill. App.* 3d 232, 338 *N. E.* 2d at 117; "factual basis," *cf. North Carolina v. Alford,* 400 *U. S.* 25, 38, 91 *S. Ct.* 160, 168, 27 *L. Ed.* 2d 162, 172 (1970), or other variations, all are subsumed in the requirement that the condition of probation be "reasonable and just," *People v. Tidwell, supra,* 33 *Ill. App.* 3d 232, 338 *N. E.* 2d at 118, a most satisfactory standard.

Finally, we invite the attention of the sentencing courts to the fact that under the philosophy of *Morrissey, supra,* and *D.G.W., supra,* the justification for a restitution condition imposed comes within the broad reach of the "statement of reasons" rules, *R.* 3:21-4(e); *R.* 7:4-6(c).

That statement, completing the due process steps outlined in *D.G.W.*, will aid appellate determination of compliance with the "reasonableness" standard.

Subject to the foregoing observations, the judgment of the Appellate Division is affirmed. ,

*For affirmance*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For reversal*—None.