**STATE of Minnesota, Respondent,**

v.

**Richard BELFRY, Appellant.**

**No. C6–84–156.**

Court of Appeals of Minnesota.

Aug. 21, 1984.

Review Denied Oct. 30, 1984.

Paul W. Chamberlain, Wayzata, for appellant.

Heard, considered and decided by PARKER, P.J., and FOLEY, and HUSPENI, JJ.

## OPINION

FOLEY, Judge.

Belfry appeals his jury conviction of theft by swindle of $2,500 or more. The evidence of criminal intent sustained the verdict. Belfry waived any objection to aggregation of eight offenses into one complaint; the court did not err by failing to strike certain offenses from the complaint. We affirm.

## FACTS

Belfry operated a business called Delta Associates. Delta sold reconditioned automobiles to its customers. Customers would request a particular car which was paid for in advance. Four to eight weeks later the automobile was to be delivered. A provision in the sales contract allowed the customer to sell back the car to Delta at the original sales price six months after delivery. This provided Delta with low cost working capital and the customer with a low cost car. Under this plan, Delta had sold 200–300 automobiles and earned a net profit of $24,000 in 1979. Thereafter, Delta ran into financial difficulties.

Between April 1980 and April 1981, several customers tendered Belfry money and never received their car. A single complaint against Belfry listed offenses involving eight customers. Five of these lost over $2,500 apiece. The other three had losses ranging from $500 to $1,600 apiece.

Considerable evidence showed that Belfry cheated these eight. Belfry took money from two individuals and sold them each the same 1979 Volkswagen Rabbit without the other's knowledge. Belfry obtained possession of a 1978 Celica G.T. and sold it without informing the owner for several months. One of the eight lost over $6,000 on a 1979 Audi 5000S that was paid for and

Hubert H. Humphrey, III, State Atty. Gen., Thomas L. Johnson, Hennepin County Atty., Beverly J. Wolfe, Asst. County Atty., Minneapolis, for respondent.

never delivered. A down payment was made for a 1979 BMW 3201 that Belfry obtained but then had stripped down. The parts were sold without the customer's knowledge.

These were not business errors. Belfry fended off customer inquiries with repeated delays, false excuses and explanations regarding non-existent transactions or fictitious damages. Occasionally he informed a customer that he was having cash-flow problems. In almost every instance money was diverted from purchasing the customer's particular car to paying the overhead of Delta and thereby perpetuating the business. But no evidence showed that Belfry siphoned off money for personal use or that Delta made extravagant expenditures.

One of the offenses in the complaint occurred in Dakota, not Hennepin, County. Belfry himself did not testify.

## ISSUES

1. Was the evidence of Belfry's criminal intent sufficient to support his conviction?

2. Was aggregation of eight offenses into one complaint appropriate?

3. Did the judge err by not striking certain offenses from the complaint?

## ANALYSIS

1. We view the evidence in the light most favorable to the verdict. *State v. Daniels*, 332 N.W.2d 172, 180 (Minn.1983). Belfry was convicted of theft by swindle over $2,500 in violation of Minn.Stat. § 609.52(2)(4), and (2)(5)(a) (1982) as follows:

> Whoever does any of the following commits theft * * *
>
> (4) By swindling, whether by artifice, trick, device, or any other means, obtains property or services from another person; or
>
> (5) Intentionally commits any of the acts listed in this subdivision but with intent to exercise temporary control only; and

> (a) The control exercised manifests an indifference to the rights of the owner or the restoration of the property to him.

The thrust of Belfry's argument is that the intent standard of the crime is not met since at all times he was acting as a businessman attempting to resuscitate an ailing enterprise. By this reasoning, the eight who lost money were as creditors to a bankrupt company.

▬ In fact, Belfry erected a pyramid of lies to perpetuate his business. The interests of Delta always preceded those of his customers. While the line between ordinary and criminal intent is not always clear, Belfry's frequent resort to deception would have allowed the jury to infer criminal intent in his dealings with the eight customers.

▬ Belfry asserts that criminal intent must be contemporaneous with the act of taking money or property for there to be a swindle. *See, State v. Williams*, 324 N.W.2d 154 (Minn.1982). The court did not instruct the jury to that effect. The court did instruct the jury on all the elements of a swindle. Nonetheless each attorney, particularly the defense attorney, stressed in closing argument the necessity of relating intent to the moment that Belfry took a customer's money or automobile. For that reason, failure to instruct that criminal intent must be contemporaneous with the act of taking was harmless error. *See, State v. Shore*, 289 Minn. 302, 183 N.W.2d 776 (1971).

2. The complaint listed in one count alternative offenses against the eight customers. The jury was informed that the elements of the crime would be satisfied if a swindle was found as to any one or more of the eight so long as the property obtained by the defendant aggregated to $2,500 or more.

▬ It generally is true that each count in a complaint may charge only one offense. Rule 17.02(3), Minn.R.Crim.P. Though certain theft offenses, including those under subdivision 2(4) charged here, may be aggregated. Minn.Stat. § 609.-

52(3)(5) (1982). But we do not reach the merits of the defendant's underlying claim. The defense did not object to aggregation, to the venue of the Dakota County offense in Hennepin County, or to combining offenses which occurred over the course of one year. The decision not to object may be viewed as tactical. The risk of one conviction at one trial could have been weighed against the costs and possibility of multiple convictions at several trials. In contrast to these amplified risks, the defendant would gain no appreciable advantage in being tried separately. In any event, the failure to object constitutes waiver. *State v. Lloyd*, 310 N.W.2d 463 (Minn.1981).

 3.a. Two of the eight customers testified that they did not think of themselves as victims because they believed Belfry had good, not criminal, intentions. Belfry contends that offenses involving them should not have been charged.

The victims' impressions are one factor among several that the jury considered regarding Belfry's intent. The customers were not necessarily in the best position to know Belfry's intent. This is unlike *State v. Stout*, 273 N.W.2d 621 (Minn.1978), in which a storekeeper testified that the value of goods taken from him was less than $2,500. In that situation the only evidence of value was given by the owner.

b. Was selling off parts of a car without informing the owner a swindle?

A swindle requires use of "artifice, trick, device or other means" to obtain property. Belfry took a customer's down payment for a 1979 BMW 3201 and actually bought the car from a dealer. Without telling the customer, Belfry then had the car stripped and its parts sold. In the meantime, the customer's inquiries were fended off with excuses. This transaction does not differ in kind from the situations where Belfry took down payments and never delivered the designated car. The jury could infer that criminal intent was present at the time that Belfry initially took the customer's money, even though the opportunity to act on that intent did not arise until later. It is true that this conduct may also amount to an embezzlement. But like others who never received their car, this customer was swindled.

The defense also contends that Belfry lacked effective assistance of counsel and that Belfry's refusal to testify was not voluntary. There is no merit to this contention. Belfry's trial attorney was well seasoned and put up a vigorous defense. Belfry's voluntary decision not to testify was contained in the record.

## DECISION

Belfry's conviction was sustained by the evidence. Belfry waived any objection to aggregation of the eight offenses into one count. The court properly refused to strike certain offenses from the complaint. We affirm.