**STATE of Minnesota, Respondent,**

v.

**Richard F. BELFRY, Appellant.**

**No. CX–87–1485.**

Court of Appeals of Minnesota.

Dec. 15, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas Johnson, Hennepin Co. Atty., Beverly J. Wolfe, Ass't. Co. Atty., Minneapolis, for respondent.

Paul W. Chamberlain, Wayzata, for appellant.

Heard, considered and decided by FORSBERG, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This appeal is from an order, pursuant to sentence previously imposed, with execution stayed, requiring appellant Richard Belfry to pay, as a condition of probation, restitution to victims of a theft by swindle of which he was convicted. *See State v. Belfry*, 353 N.W.2d 224 (Minn.Ct.App. 1984), *pet. for rev. denied* (Minn. October 30, 1984). We affirm.

## FACTS

In 1982 Belfry was charged with one count of theft by swindle, alleged to have occurred against eight named individuals. *See* Minn.Stat. § 609.52, subd. 2(4) and (5)(a) (1982). The facts of the offense are summarized in this court's opinion on appeal from the conviction, *Belfry*, 353 N.W. 2d at 225–26.

Following the direct appeal, and during post-conviction proceedings, the trial court ordered restitution paid in the amounts determined by the probation officer, subject to evidence to be presented at a restitution hearing. The order provided:

> Defendant is ordered to appear to show good cause why the amounts set out in the attached Exhibit A should not be paid. All alleged victims should plan to attend and be ready to contest Defendant's denial of the amounts claimed.

The order included not only those victims named in the complaint, but victims of *Spreigl* offenses introduced at trial, and others identified in the course of the investigation. The total potential restitution was $97,962.45.

At the restitution hearing only two victims named in the complaint personally appeared and one appeared through his attorney. The final restitution order restricted restitution to those victims named in the complaint.

All of the victims named in the complaint received a pro rata share of the motor vehicle dealer's bond, which was paid out by State Surety Company in settlement of an interpleader action brought to determine the distribution of the bond proceeds. The victims were paid in January 1983 after the criminal complaint had been filed, but three months before trial. In exchange for payment from the bonding company, each victim signed a release of all claims against Belfry's company, Delta Associates, or against the bonding company.

Belfry filed a bankruptcy petition just prior to the restitution hearing. The bankruptcy court determined that Belfry's debt to victim Donald Henrich was not subject to the exclusion for money obtained by false representations or actual fraud, 11 U.S.C. § 523(a)(2)(A), and discharged all but $500 of Henrich's claim.

Victim Elizabeth Anderson settled her claim in bankruptcy court including claims for restitution based on criminal proceedings. The trial court ordered restitution to Anderson for her original loss less her pro rata share of the bond and her settlement in bankruptcy court.

All the victims either sued Belfry or made arrangements with him for repayment of at least part of their loss. The trial court's restitution order credited Bel-

fry with an offset for amounts the victims received but did not give effect to releases signed by the victims.

*Donald Henrich*

Henrich not only challenged the bankruptcy court discharge, but earlier had brought a civil action along with a friend and *Spreigl* victim, Larry Schroeder. The civil action resulted in a settlement which netted Henrich $4,000, of which amount, $3,000 came from a share of the proceeds with his co-plaintiff Schroeder. The state contends this was a voluntary agreement by Schroeder and should not be credited to Belfry. Schroeder also received money from Belfry's partner and his share of the bond.

*Lyle Goodspeed*

Goodspeed agreed to settle for $750 and the proceeds of a sheriff's sale of a tow truck which netted him $2,500.

*Dennis Heidelberg*

Heidelberg and co-victim Jeffrey Schuh settled with Belfry reserving his claim against the bonding company from which he received his pro rata share.

*Jeffrey Schuh*

Schuh was sold the same car that had been sold to Heidelberg, and received the car, losing only the amount required to clear title. This was offset by his share of the bond.

*Kris Wyrobeck*

Wyrobeck received a replacement car for the car Belfry failed to deliver, and Belfry signed a note for the $1,600 difference, which was not paid. The amount outstanding was offset by the money for the bond.

*Tom Wyrobeck*

Belfry repaid Tom Wyrobeck most of his loss and he received a share of the bond. Restitution was ordered for the remainder.

## ISSUE

Did the trial court abuse its discretion in ordering restitution to the victims?

## ANALYSIS

The trial court has broad discretion in ordering reasonable restitution.

*State v. Muller,* 358 N.W.2d 72, 76 (Minn. Ct.App.1984). The order must have a factual basis in the record. *State v. Fader,* 358 N.W.2d 42, 48 (Minn.1984).

Belfry contends that because the theft was charged in only one count, aggregating all eight named victims, there was no finding of criminal conduct as to each victim and therefore no basis for restitution. However, Belfry's criminal liability as to each victim was a "[finding] of fact bearing on sentencing," *State v. Olson,* 379 N.W.2d 524, 527 (Minn.1986), which the trial court could make. Moreover, Belfry waived any challenge to the single-count complaint by failing to object. *Belfry,* 353 N.W.2d at 226–27.

Belfry also argues the settlements and releases signed by the victims both before and after the criminal prosecution bar the court from ordering restitution. The state's goals in imposing restitution are broader than merely compensating the victim, as the defendant's payment to the victim serves a rehabilitative purpose. *See Fader,* 358 N.W.2d at 48; *Kelly v. Robinson,* — U.S. —, —, 107 S.Ct. 353, 362–63, 93 L.Ed.2d 216 (1986) (restitution serves the state's goals of rehabilitation and punishment). Thus, the state is not barred from seeking, or the court from imposing, reasonable restitution. There is no double recovery. Any restitution awarded would operate as a set off against any recovery received in a civil action. *Fader,* 358 N.W.2d at 48. The trial court did not abuse its discretion in ordering restitution for the uncompensated loss of each victim, with an offset for amounts recovered by civil action. *Cf. State v. Glewwe,* 307 Minn. 513, 515, 239 N.W.2d 479, 480 (1976) (restitution improper where stolen property had been returned to victim).

The $3,000 received by Henrich and credited to Belfry as an offset, resulted from civil litigation brought by Henrich and Schroeder. The trial court was within its discretion in deducting this amount from the restitution order.

■ The court in ordering restitution is not limited by the victims' opinions on whether they have been victimized. *See Belfry*, 353 N.W.2d at 227 (customer's impressions are only one factor in assessing intent to swindle).

■ The victims did not waive their restitution claims by failing to appear at the restitution hearing. The victims submitted detailed restitution forms to the probation officer and Belfry had ample opportunity to contest those amounts. There was an ample factual record to support the restitution ordered.

### DECISION

The trial court did not abuse its discretion in ordering restitution to the victims named in the complaint.

Affirmed.