741 N.W.2d 57 (2007)
PEOPLE of the State of Michigan, Plaintiff-Appellant
v.
Bernice W. BELL, Defendant-Appellee.
People of the State of Michigan, Plaintiff-Appellant
v.
Willie B. Aldridge, Defendant-Appellee.
Docket Nos. 264935, 264943.
Court of Appeals of Michigan.
Submitted February 7, 2007, at Detroit.
Decided July 26, 2007, at 9:05 a.m.
Released for Publication October 26, 2007.
*58 David G. Gorcyca, Prosecuting Attorney, Joyce F. Todd, Chief, Appellate Division, and Anica Letica, Assistant Prosecuting Attorney, for the people.
Sharon Clark Woodside, Southfield, for the defendants.
Before: MARK J. CAVANAGH, P.J., and MURPHY and METER, JJ.
METER, J.
Defendant Willie B. Aldridge pleaded nolo contendere to four counts of embezzlement under MCL 750.174(4)(a) (involving "money or personal property [with] . . . a value of $1,000.00 or more but less than $20,000.00"), and defendant Bernice W. Bell pleaded nolo contendere to one count of embezzlement under MCL 750.174(3)(a) (involving "money or personal property [with] . . . a value of $200.00 or more but less than $1,000.00").[1] The trial court sentenced defendants to probation and ordered them to pay various costs and fees. After initially ordering defendants to pay restitution, the court later ruled that a civil settlement reached between Aldridge and the school district precluded the ordering of restitution from either defendant. The prosecutor appeals by leave granted from this ruling. We conclude that the settlement did not preclude the ordering of restitution and we therefore reverse the trial court's ruling and remand these cases for further proceedings.
The prosecutor alleged below that Aldridge, the principal of Pontiac Central High School at the time of the crimes, issued checks to Bell, her sister, from a student-activities account that belonged to the Pontiac School District. The prosecutor alleged that Bell had no connection to the student activity for which the account was designated and cashed the checks for her own personal use. Aldridge was charged as a principal in the crimes, while Bell was charged under an aiding and abetting theory.
Subsequently, Aldridge reached a settlement with the school district. The agreement provided, among other things, that Aldridge would resign her position with the school district and dismiss her pending grievance and her action before the State Tenure Commission in exchange for a payment of $40,742. The agreement also provided that the school district released Aldridge from "any and all claims, demands, actions, causes of action, controversies, grievances, charges, and suits of every kind. . . ." Bell did not sign the agreement, and defendants subsequently entered their nolo contendere pleas.
The court initially ordered defendants to pay restitution to the school district in the amount of $7,223.92, subject to an evidentiary hearing on the matter. In the interim, the school district's insurer, Middle Cities' Risk Management Trust, had paid $13,661.73 to the school district to compensate it for defendants' illegal activities. The insurer requested that a restitution order in this amount be entered in its favor as reimbursement for the payment.
At the restitution hearing, the prosecutor argued that under the Crime Victim's Rights Act (CVRA), MCL 780.751 et seq., restitution should be ordered regardless of the settlement that purported to release Aldridge from any and all claims against her. The prosecutor also asserted that because Bell had not signed the agreement, any release of claims against Aldridge *59 did not apply to Bell. The trial court reasoned that under the settlement the school district, and by extension its insurer, gave up any claims it had against Aldridge. The court further reasoned that Bell, as an aider and abettor, could not be held liable for restitution if Aldridge, the principal in the crimes, could not be held liable.
The prosecutor argues on appeal that the trial court erred by denying restitution, and we agree. This Court "typically review[s] a trial court's order of restitution for an abuse of discretion." People v. Byard, 265 Mich.App. 510, 511, 696 N.W.2d 783 (2005). "However, when the determination of restitution involves statutory interpretation, the review is de novo." Id. The goal in interpreting statutes is to ascertain the Legislature's intent. In re McEvoy, 267 Mich.App. 55, 59, 704 N.W.2d 78 (2005). "The first criterion in determining the Legislature's intent is the specific language of the statute. If the plain and ordinary meaning of the language is clear, judicial construction is normally neither permitted nor necessary." People v. Fox (After Remand), 232 Mich.App. 541, 553, 591 N.W.2d 384 (1998). "Statutory language should be construed reasonably. . . ." In re McEvoy, supra at 60, 704 N.W.2d 78.
"Restitution is afforded both by statute and by the Michigan Constitution." People v. Newton, 257 Mich.App. 61, 68, 665 N.W.2d 504 (2003). The Michigan Constitution provides that "[c]rime victims, as defined by law, shall have the following rights, as provided by law: . . . [t]he right to restitution." Const. 1963, art. 1, § 24 (emphasis added). The CVRA states:
(2) Except as provided in subsection (8), when sentencing a defendant convicted of a crime, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate.
* * *
(8) The court shall order restitution to the crime victim services commission or to any individuals, partnerships, corporations, associations, governmental entities, or other legal entities that have compensated the victim or the victim's estate for a loss incurred by the victim to the extent of the compensation paid for that loss. The court shall also order restitution for the costs of services provided to persons or entities that have provided services to the victim as a result of the crime. Services that are subject to restitution under this subsection include, but are not limited to, shelter, food, clothing, and transportation. However, an order of restitution shall require that all restitution to a victim or victim's estate under the order be made before any restitution to any other person or entity under that order is made. The court shall not order restitution to be paid to a victim or victim's estate if the victim or victim's estate has received or is to receive compensation for that loss, and the court shall state on the record with specificity the reasons for its action. [MCL 780.766 (emphasis added).]
This Court has held that an insurance company may be awarded restitution under the CVRA for money paid to a victim for a defendant's criminal act. See Byard, supra at 513, 696 N.W.2d 783. The amount of restitution to be paid by a defendant must be based on the actual loss suffered by the victim, not the amount paid by an insurer or other entity. In re McEvoy, supra at 75-77, 704 N.W.2d 78.
*60 The pertinent language of the CVRA clearly states that a sentencing court shall order restitution to the victim of a crime or to an entity that has compensated the victim. MCL 780.766(2) and (8). The only exception is when "the victim or victim's estate has received or is to receive compensation for [the] loss. . . ." MCL 780.766(8). The use of the word "shall" indicates that the directive to order restitution is mandatory, unless the exception applies. The "use of the term `shall' rather than `may' indicates mandatory rather than discretionary action." People v. Grant, 445 Mich. 535, 542, 520 N.W.2d 123 (1994). Accordingly, restitution must be paid to the insurer that compensated the school district, regardless of the existence of the civil settlement.
This Court has previously emphasized the mandatory nature of restitution. In People v. Ronowski, 222 Mich.App. 58, 59-60, 564 N.W.2d 466 (1997), the defendant argued that he should not be made to pay restitution because it was not part of the sentence recommendation made in connection with his plea. This Court disagreed, reasoning that because restitution is now mandatory under the CVRA, restitution must be ordered in addition to any other penalty, regardless of the terms of a plea agreement. Id. at 61, 564 N.W.2d 466. The Court stated, "[b]ecause restitution is now mandatory, it is no longer open to negotiation during the plea-bargaining or sentence-bargaining process, and defendants are on notice that restitution will be part of their sentences." Id.; see also People v. Hart, 211 Mich.App. 703, 708, 536 N.W.2d 605 (1995) ("[b]y entering into the plea agreement, defendant implicitly agreed that he would pay restitution in an amount accurately determined by the court"). As noted in Hart, supra at 708 n. 1, 536 N.W.2d 605, quoting Von Hoffman v. City of Quincy, 4 Wall. 535, 71 U.S. 535, 550, 18 L.Ed. 403 (1867):
"[T]he laws which subsist at the time and place of the making of a contract . . . enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This principle embraces alike those which affect its validity, construction, discharge, and enforcement."
In light of these authorities, the civil agreement between Aldridge and the school district that limits claims against Aldridge should not be construed as establishing a waiver of a mandatory provision of criminal law requiring the payment of restitution to the victims of crimes or to entities that have compensated those victims.
This result comports with the practices of other states that have considered the issue. For example, in State v. DeAngelis, 329 N.J.Super. 178, 189, 747 A.2d 289 (2000), the Superior Court of New Jersey concluded that a civil settlement and release that required the defendant to pay a lesser amount than that specified in a criminal restitution order "did not operate to release defendant from his obligations under the restitution order." The DeAngelis court observed that "[o]ut-of-state courts which have considered this question have uniformly held that a civil settlement or release does not absolve the defendant of criminal restitution." Id. at 187, 747 A.2d 289. The court quoted the following statement from a Colorado case:
"`We conclude that a release from liability obtained in a civil settlement cannot limit a criminal court's authority to order restitution equivalent to actual pecuniary damages. A contrary conclusion . . . would frustrate the rehabilitative purposes by permitting criminal defendants to avoid financial responsibility for their conduct.'" [DeAngelis, supra at 187, 747 A.2d 289, quoting People v. *61 Maxich, 971 P.2d 268, 269 (Colo.App., 1998).]
Additionally, in a criminal case in which the defendant crashed his truck into the victim's car and later settled with her for his car insurance's limits in exchange for a release from any future damages or compensation "of whatever nature," the Indiana Supreme Court held that the trial court had the authority to award restitution. Haltom v. State, 832 N.E.2d 969, 970 (Ind., 2005). The Haltom court reasoned that "a private contract to which neither the State nor the court are parties cannot impinge upon the authority of the State to seek and the court to impose a criminal sanction." Id. The court also noted that "allowing a civil settlement to preclude restitution altogether would infringe upon the State's power to administer criminal punishment." Id. at 972. Similarly, in Abeyta v. State, 42 P.3d 1009, 1010-1011 (Wyo.2002), the Wyoming Supreme Court held that, even though a defendant had executed a civil settlement and release with the victims of his offense, the settlement and release did not absolve the defendant of his restitution obligation. The court noted that "private parties cannot simply agree to waive the application of a criminal statute." Id. at 1013.
While we recognize that the out-of-state cases we cited are not binding on this Court, we find their reasoning to be persuasive. The existence of the civil settlement between Aldridge and the school district does not relieve the sentencing court of its statutorily mandated duty to order restitution.[2]
Our conclusion applies equally to Bell. As noted earlier, the CVRA states that "when sentencing a defendant convicted of a crime, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution. . . ." MCL 780.766(2). Here, Bell was convicted of a crime and must pay restitution as part of her sentence. Id. Moreover, MCL 767.39 states:
Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.
This statute makes clear that Bell must pay restitution for her crime just as if she were a principal.
In both cases, we reverse and remand for further proceedings. We do not retain jurisdiction.
NOTES
[1] Various other embezzlement charges against defendants were dismissed as a result of their pleas.
[2] As noted earlier, the amount of restitution must be based on the loss suffered by the school district, rather than the amount paid by the insurer. In re McEvoy, supra at 75-77, 704 N.W.2d 78. The trial court shall determine the proper amount of restitution on remand. We decline to consider defendants' allegations on appeal concerning the proper amount of restitution.