*In re* McEvoy

Docket No. 254116. Submitted June 8, 2005, at Lansing. Decided June 21, 2005, at 9:15 a.m. Leave to appeal sought.

Sean McEvoy, a juvenile in the Family Division of the Livingston Circuit Court, admitted committing acts that would constitute arson and malicious destruction of property if committed by an adult after he vandalized the Howell High School. The Howell Public Schools was compensated by its insurance company, SET-SEG, for the replacement cost of the damaged property. The court, Susan L. Reck, J., ordered that James and Maria McEvoy, the supervisory parents of the juvenile, pay restitution to SET-SEG in the amount of $715,581.49, but ordered that SET-SEG may collect only from the proceeds of policies of insurance issued to the McEvoys, and not from their personal assets. James and Maria McEvoy appealed.

The Court of Appeals *held*:

1. The family division correctly determined that the parents could be required to pay restitution to the school's insurance company. MCL 712A.30(2) and (3) provide for restitution of a loss sustained by the victim of a juvenile offense, such as the school in this case. MCL 712A.30(8) provides for restitution to any person or entity that has compensated the victim, such as the school's insurance company. MCL 712A.30(15) allows the court to order payment of restitution by a supervisory parent where the juvenile is unable to pay all the restitution ordered, subject to reductions as provided for in MCL 712A.31(1) to make the amount reasonable for the parent to pay.

2. Payment of restitution by supervisory parents is not a punishment of the parents for the act of the juvenile. For that reason, it does not deprive the parents of substantive due process. Because the parents in this case did not meet their burden of establishing that either no legitimate public purpose was served by MCL 712A.30(15) or that there is no rational relationship between the statute's provisions and a legitimate public purpose, their substantive due process argument failed. The statute links liability with responsibility in a reasonable, purposeful manner, rather than burdening society in general or the victim in particular for

the costs of a juvenile's acts. The statute only imposes liability on a parent responsible for supervising the juvenile.

3. Payment of restitution by supervisory parents is not a punishment of the parents for their status as parents and does not offend the constitutional prohibition of bills of attainder. The Legislature may not enact a bill of attainder. US Const, art 1, § 10, cl 1; Const 1963, art 1, § 10. A bill of attainder determines guilt and inflicts punishment on an identifiable group of individuals without the protections of a judicial trial. The burdens placed on parents by MCL 712A.30 do not make those burdens punishments within the meaning of the proscriptions against bills of attainder. The statutory enactments at issue were designed to protect the rights of crime victims and they underscore the compensatory nature of restitution. The fact that a restitution order may cause financial pain does not transform the restitution order into a primarily penal sanction. Parental restitution is not punishment in the constitutional sense. Because MCL 712A.30 is not punitive in its purpose and effect, it is not a bill of attainder.

4. The trial court erred in the amount of restitution awarded. The school's insurance company, SET-SEG, paid the replacement value of the damaged or destroyed property because of its contractual relationship with the school. However, the proper measure of restitution is the value of the goods destroyed, i.e., the victim's actual loss. A remand is necessary for a redetermination of the amount of restitution.

Affirmed in part, restitution order vacated, and case remanded for further proceedings.

1. CONSTITUTIONAL LAW — SUBSTANTIVE DUE PROCESS — JUVENILE CODE — RESTITUTION — SUPERVISING PARENTS.

A court may order a supervising parent of a juvenile offender to pay restitution that the juvenile is unable to pay; such an order does not violate the parent's right to substantive due process (US Const, Am V and Am XIV; Const 1963, art 1, § 17; MCL 712A.30).

2. CONSTITUTIONAL LAW — BILLS OF ATTAINDER — JUVENILE CODE — RESTITUTION — SUPERVISING PARENTS.

The burdens placed on supervising parents by the juvenile code for restitution for damages caused by an offending juvenile under their control are not punishments based on status within the meaning of the constitutional prohibition of bills of attainder; they are designed to protect the rights of crime victims and underscore the compensatory nature of restitution (US Const, art I, § 10, cl 1; Const 1963, art 1, § 10; MCL 712A.30).

3. Infants — Juvenile Code — Restitution.

> Restitution to the victim of a juvenile offense is properly measured by the value of the property damaged or destroyed, i.e., by the victim's actual loss (MCL 712A.30).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *David L. Morse*, Prosecuting Attorney, and *William J. Vailliencourt, Jr.*, Assistant Prosecuting Attorney, for the people.

*Kluczynski, Girtz & Vogelzang* (by *Christopher D. Matthysse*) for SET-SEG.

*Gault Davison, P.C.* (by *Edward B. Davison*), for James and Maria McEvoy.

Before: OWENS, P.J., and CAVANAGH and NEFF, JJ.

NEFF, J. Appellants James and Maria McEvoy, parents of minor Sean McEvoy, appeal as of right an order of the family division of the circuit court directing that they pay $715,581.49 in restitution to appellee insurer SET-SEG for insurance compensation paid to Howell Public Schools after a fire set by Sean caused extensive property damage to Howell High School. We affirm in part, but vacate the restitution order and remand for a redetermination of the amount of the loss sustained by Howell Public Schools.

I

This case presents issues of first impression under the juvenile code, MCL 712A.1 *et seq.*, to determine the extent to which a court may order restitution for offenses committed by a juvenile. The key question for our decision is whether, pursuant to MCL 712A.30 and MCL 712A.31, a court may require parents, on the basis of their status as supervisory parents, to pay restitution

to an insurance company for compensation paid to an insured school district under a property insurance policy.

We hold that the court's imposition of restitution under MCL 712A.30 and MCL 712A.31 did not violate appellants' constitutional right to substantive due process and the statutory provisions for restitution did not act as an unconstitutional bill of attainder. However, the court erred in imposing an obligation to pay SET-SEG restitution based on the replacement value of property damages paid pursuant to its policy of insurance provided to Howell Public Schools rather than on the basis of the school district's actual loss.

II

The parties do not dispute the underlying facts in this case. During the early morning hours of April 8, 2002, Sean, then fifteen years old, broke into Howell High School, vandalized the school, and set several fires. The fires activated the automatic sprinkler system, which extinguished the fires, but the sprinkler system was on for several hours before the police and fire department arrived, which caused extensive water damage in the school.[1]

Within a matter of days, Sean was arrested in connection with the fire and charged with various criminal offenses. Under a plea agreement, Sean admitted several charges against him, including arson of nondwelling real property, MCL 750.73, and malicious destruction of personal property, MCL 750.377a(1).

---

[1] At some point after the school was opened in 1981, the school disconnected its direct alarm to the police and fire departments because of false fire alarms at the school. Consequently, the damage was not discovered until school personnel reported for work. The court rejected appellants' argument that restitution should be limited on this basis, and this issue has not been raised on appeal.

Following the fire, the school district hired contractors to clean up, and refurbish or replace damaged equipment and furniture. SET-SEG, the property insurer for Howell Public Schools, paid $744,195.47 in claims to compensate the school district for its costs related to the fire. SET-SEG then filed a petition for restitution in the family division, seeking reimbursement from Sean and appellants for the compensation paid to the school district. Following an evidentiary hearing, the court ordered that Sean pay restitution of $715,581.49, noting that although the insurance company's actual drafts to the school district totaled $744,195.47, the actual invoices supported a lesser sum of $715,581.49. After further hearings concerning payment of restitution, the court ordered that appellants were liable for payment of restitution to SET-SEG, but that SET-SEG may seek to satisfy this obligation only from proceeds of insurance policies issued to appellants, and not from their personal assets.

### III. STANDARD OF REVIEW

An order of restitution is generally reviewed for an abuse of discretion. *People v Byard*, 265 Mich App 510, 511; 696 NW2d 783 (2005). When the question of restitution involves a matter of statutory interpretation, review de novo applies. Statutory interpretation is a question of law subject to a review de novo. *People v Law*, 459 Mich 419, 423; 591 NW2d 20 (1999); *People v Crigler*, 244 Mich App 420, 423; 625 NW2d 424 (2001).

The primary goal in interpreting statutes is to ascertain the intent of the Legislature. *Id.* " 'The first criterion in determining the Legislature's intent is the specific language of the statute. If the plain and ordinary meaning of the language is clear, judicial construction is normally neither permitted nor necessary.' " *Id.*,

quoting *People v Fox (After Remand)*, 232 Mich App 541, 553-554; 591 NW2d 384 (1998). Statutory language should be construed reasonably, keeping in mind the purpose of the act. *Draprop Corp v City of Ann Arbor*, 247 Mich App 410, 415; 636 NW2d 787 (2001).

IV

The juvenile code, MCL 712A.30, provides for restitution of a loss sustained by a victim of a juvenile offense:

> (2) Except as provided in subsection (8), at the dispositional hearing for a juvenile offense, the court shall order, in addition to or in lieu of any other disposition authorized by law, that the juvenile make full restitution to any victim of the juvenile's course of conduct that gives rise to the disposition or to the victim's estate.
>
> (3) If a juvenile offense results in damage to or loss or destruction of property of a victim of the juvenile offense, or results in the seizure or impoundment of property of a victim of the juvenile offense, the order of restitution may require that the juvenile do 1 or more of the following, as applicable:
>
> (a) Return the property to the owner of the property or to a person designated by the owner.
>
> (b) If return of the property under subdivision (a) is impossible, impractical, or inadequate, pay an amount equal to the greater of subparagraph (*i*) or (*ii*), less the value, determined as of the date the property is returned, of that property or any part of the property that is returned:
>
> (i) The value of the property on the date of the damage, loss, or destruction.
>
> (ii) The value of the property on the date of disposition.

Subsection 8 provides an exception to the statutory mandate for restitution to the victim "if the victim or victim's estate has received or is to receive compen-

sation for that loss," in which case the court shall order restitution directly to an individual or entity that has or will be compensating the victim:

> The court shall order restitution to the crime victims compensation board or to any individuals, partnerships, corporations, associations, governmental entities, or any other legal entities that have compensated the victim or victim's estate for a loss incurred by the victim to the extent of the compensation paid for that loss. The court shall also order restitution, for the costs of services provided, to persons or entities that have provided services to the victim as a result of the juvenile offense. Services that are subject to restitution under this subsection include, but are not limited to, shelter, food, clothing, and transportation. However, an order of restitution shall require that all restitution to a victim or victim's estate under the order be made before any restitution to any other person or entity under that order is made. The court shall not order restitution to be paid to a victim or victim's estate if the victim or victim's estate has received or is to receive compensation for that loss, and the court shall state on the record with specificity the reasons for its actions. If an entity entitled to restitution under this subsection for compensating the victim or the victim's estate cannot or refuses to be reimbursed for that compensation, the restitution paid for that entity shall be deposited by the state treasurer in the crime victim's rights fund created under [MCL 780.904]. [MCL 712A.30(8).]

The juvenile code further provides in subsection 15 that if a juvenile is unable to pay all the restitution ordered, the court may order payment from the juvenile's supervisory parent:

> If the court determines that the juvenile is or will be unable to pay all of the restitution ordered, after notice to the juvenile's parent and an opportunity for the parent to be heard, the court may order the parent or parents having supervisory responsibility for the juvenile at the time of the acts upon which an order of restitution is based to pay any

portion of the restitution ordered that is outstanding. An order under this subsection does not relieve the juvenile of his or her obligation to pay restitution, but the amount owed by the juvenile shall be offset by any amount paid by his or her parent. As used in this subsection, "parent" does not include a foster parent. [MCL 712A.30(15).]

MCL 712A.31 contains provisions for determining the amount of restitution under § 30:

(1) In determining the amount of restitution to order under section 30 of this chapter, the court shall consider the amount of the loss sustained by any victim as a result of the juvenile offense. In determining whether to order the juvenile's supervisory parent to pay restitution under section 30(15) of this chapter, the court shall consider the financial resources of the juvenile's supervisory parent and the other factors specified in section 30(16) of this chapter.

* * *

(4) Any dispute as to the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the juvenile offense shall be on the prosecuting attorney. The burden of demonstrating the financial resources of the juvenile's supervisory parent and the other factors specified in section 30(16) of this chapter shall be on the supervisory parent.

MCL 712A.30(1)(b) defines the term "victim" for purposes of §§ 30 and 31:

"Victim" means an individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a juvenile offense. For purposes of subsections (2), (3), (6), (8), (9), and (13), victim includes a sole proprietorship, partnership, corporation, association, governmental entity, or other legal entity that suffers direct physical or financial harm as a result of the commission of a juvenile offense.

A

The juvenile code employs the same statutory scheme for restitution found in the Crime Victim's Rights Act (CVRA), MCL 780.766 and MCL 780.767, and contains identical language in various corresponding provisions.[2] Accordingly, the Legislature's overall intent in mandating restitution for crime victims may be discerned from the comprehensive scheme governing victims under the CVRA as well as the juvenile code. Further, our courts' interpretations of provisions in the CVRA are properly applied to statutory interpretation of substantively identical corresponding provisions in the juvenile code.

B

The first issue for our resolution is whether the statutory scheme permits the trial court to order appellants, as parents, to pay restitution on behalf of the school district victim. We find no merit in appellants' contention that pursuant to the definition of "victim" in MCL 712A.30(1)(b), the school district is a victim for purposes of only "subsections (2), (3), (6), (8), (9), and (13)," and therefore parents may not be required to pay restitution under subsection 15 to a "non-individual" victim. Appellants premise this argument on the Legislature's purported intent to engage in "social engineering" by holding a juvenile's parents liable only with respect to individual victims, but not other victims. Appellants argue that had the Legislature intended to treat individual and entity victims equally, the Legisla-

---

[2] The juvenile code was amended in 1993 to require the probate court, since redesignated as the family division of the circuit court, to order a juvenile offender or his or her parents to pay restitution as provided by the CVRA. House Legislative Analysis, SB 469, September 21, 1993, p 2; see also 1993 PA 344.

ture would have chosen a single unified definition of "victim." We find no support for appellants' interpretation of the statute and cannot read such intent into the statute on the basis of appellants' strained interpretation of the statutory scheme.

Foremost in negating appellants' logic is the fact that the word "victim" does not appear in subsection 15, and therefore there is no need to define the term for purposes of that subsection. Further, the key language in the definition of the term "victim" is identical in both the juvenile code and the CVRA: "For purposes of subsections (2), (3), (6), (8), (9), and (13), victim includes a sole proprietorship, partnership, corporation, association, governmental entity, or other legal entity that suffers direct physical or financial harm as a result of the commission of a juvenile offense." MCL 712A.30(1)(b).[3] Subsection 2 is the key substantive provision providing for restitution, and that subsection expressly states that the court shall order that the juvenile "make full restitution to any victim," which by definition includes a legal entity such as the school district. MCL 780.766(1) and (2), and 712A.30(1)(b) and (2); see also *People v Gahan*, 456 Mich 264, 271; 571 NW2d 503 (1997) (the CVRA "clearly states that restitution may be ordered with respect to 'any' victim").

Most convincing, however, is the simple explanation that the subsections omitted from the entity definition of "victim" found in MCL 712A.30(1)(b) are either at odds with the broader definition because of their subject matter or the distinction in definition serves no

---

[3] MCL 780.766(1) states: "For purposes of subsections (2), (3), (6), (8), (9), and (13), victim includes a sole proprietorship, partnership, corporation, association, governmental entity, or any other legal entity that suffers direct physical or financial harm as a result of a crime."

purpose with respect to the particular statutory provision. In the former instance, the subject matters are simply inapplicable to a legal entity, e.g., "physical or psychological injury" to a victim, subsection 4; "death of a victim" and the cost of the "funeral," subsection 5; and a "deceased" victim, subsection 7. In the latter instance, the provisions not included in the broader definition are primarily procedural in nature.

Michigan law has long recognized and protected the rights of crime victims. In 1976, Public Act 223 established a crime victims compensation program that reimbursed victims for certain out-of-pocket expenses. MCL 18.352. In 1985, the CVRA was enacted, providing for specific rights of felony victims and specifying duties for the criminal justice system. 1985 PA 87. In 1988, the CVRA was expanded to provide for the rights of victims of juvenile offenders and of certain specified "serious misdemeanors." 1988 PA 21; MCL 780.811(1)(a) and 780.812. Also in 1988, voters approved an amendment to the Michigan Constitution, which added art 1, § 24, setting forth specific rights for crime victims. House Legislative Analysis, SB 469, September 21, 1993, p 1.

Subsequent legislative enactments have further expanded the rights of crime victims and the availability of restitution for both individuals and others that have sustained losses. In 1993 and 1996, the provisions for restitution to crime victims were further strengthened through a package of bills amending both the CVRA and the juvenile code. *Id.* at 1-2; see also 1993 PA 344, 1996 PA 123, and 1996 PA 561. Art 1, § 24 and the CVRA "were intended to enable victims to be compensated fairly for their suffering at the hands of convicted offenders." *People v Peters,* 449 Mich 515, 526; 537 NW2d 160 (1995).

Given the language of the statute itself, the comprehensive nature of the statutory enactments to protect crime victim rights, and the recent legislation to strengthen those statutes, we are convinced that the Legislature did not intend an obtuse exception to restitution for nonindividuals when a supervisory parent is held liable for a juvenile who is unable to pay restitution. Changes in an act must be construed in light of predecessor statutes and historical developments. *Advanta Nat'l Bank v McClarty*, 257 Mich App 113, 120; 667 NW2d 880 (2003). Moreover, nothing will be read into a clear statute that is not within the manifest intention of the Legislature as derived from the language of the statute itself. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). We hold that the school district is a victim for the purposes of the provisions in subsections 8 and 15.

C

We next consider whether the restitution that may be ordered under subsection 15 is limited in amount. We find no support for appellants' argument that § 30 of the juvenile code should be read *in pari materia* with the parental liability act (PLA), MCL 600.2913, to engraft onto the juvenile code the PLA's limitation of $2,500 liability in civil court actions. The 1993 amendments to the juvenile code increased the amount of restitution that a juvenile's parents could be ordered to pay from $2,500 to $5,000. 1993 PA 344, in former MCL 712A.30(17). The 1996 amendment removed the limitation altogether and substituted the words "any portion" for the $5,000 limitation. 1996 PA 561. MCL 712A.30(15) now states that "the court may order the parent or parents having super-

visory responsibility for the juvenile at the time of the acts upon which an order of restitution is based to pay *any portion* of the restitution ordered that is outstanding." (Emphasis added.) Given the Legislature's action of substituting the words "any portion" for the previous $5,000 limitation on liability, we find no merit in appellants' argument that the $2,500 limitation in the PLA should be read into subsection 15. A change in a statutory phrase is presumed to reflect a change in the meaning. *Edgewood Dev, Inc v Landskroener*, 262 Mich App 162, 167-168; 684 NW2d 387 (2004); *People v Pigula*, 202 Mich App 87, 90; 507 NW2d 810 (1993).

Moreover, appellants' interpretation of the statute is contrary to the overall statutory scheme for restitution to victims of crimes. The CVRA and subsection 9 of the juvenile code provide for a setoff of restitution against damages in a civil proceeding:

> Any amount paid to a victim or victim's estate under an order of restitution shall be set off against any amount later recovered as compensatory damages by the victim or the victim's estate in any federal or state civil proceeding and shall reduce the amount payable to a victim or a victim's estate by an award from the crime victims compensation board made after an order of restitution under this section. [MCL 780.794(9) and 712A.30(9).]

This specific provision for a setoff clearly recognizes that the statutory scheme for restitution is separate and independent of any damages that may be sought in a civil proceeding. This Court has repeatedly recognized that restitution is not a substitute for civil damages. *People v Orweller*, 197 Mich App 136, 140; 494 NW2d 753 (1992); *People v Tyler*, 188 Mich App 83, 89; 468 NW2d 537 (1991). Accordingly, we conclude that the juvenile code does not limit the amount of restitution for which a supervisory parent may be held liable.

V

Having rejected appellants' interpretation of the statute, we must now consider the consequent constitutional issues raised by appellants. Appellants contend that because subsection 15 permits imposition of unlimited restitution without a showing of fault on the part of the supervisory parent, it unconstitutionally deprives parents of substantive due process[4] and acts as a bill of attainder. We disagree.

A

The constitutionality of a statute is a question of law, reviewed de novo on appeal. *Tolksdorf v Griffith*, 464 Mich 1, 5; 626 NW2d 163 (2001). "A statute is presumed constitutional, unless its unconstitutionality is readily apparent." *Id*. The party challenging a statute's constitutionality cannot merely claim unconstitutionality, but has the burden of proving its invalidity. *People v Abraham*, 256 Mich App 265, 280; 662 NW2d 836 (2003).

"A rational basis standard of review governs this Court's scrutiny of the legitimacy of social and economic legislation." *Romein v Gen Motors Corp*, 436 Mich 515, 525; 462 NW2d 555 (1990), aff'd 503 US 181 (1992). Legislative acts that adjust the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and the burden is on the party complaining of a due process violation to establish that the Legislature acted arbitrarily and irrationally. *Id*.

B

Appellants' due process claim is premised on subsections 15, 16, and 17 of § 30, which, together, provide

---

[4] US Const, Am V and Am XIV; Const 1963, art 1, § 17.

authority for and limitations on imposing payment of restitution on the supervisory parent of a juvenile offender:

> (15) If the court determines that the juvenile is or will be unable to pay all of the restitution ordered, after notice to the juvenile's parent and an opportunity for the parent to be heard, the court may order the parent or parents having supervisory responsibility for the juvenile at the time of the acts upon which an order of restitution is based to pay any portion of the restitution ordered that is outstanding. An order under this subsection does not relieve the juvenile of his or her obligation to pay restitution, but the amount owed by the juvenile shall be offset by any amount paid by his or her parent. As used in this subsection, "parent" does not include a foster parent.
>
> (16) If the court orders a parent to pay restitution under subsection (15), the court shall take into account the financial resources of the parent and the burden that the payment of restitution will impose, with due regard to any other moral or legal financial obligations that the parent may have. If a parent is required to pay restitution under subsection (15), the court shall provide for payment to be made in specified installments and within a specified period of time.
>
> (17) A parent who has been ordered to pay restitution under subsection (15) may petition the court for a modification of the amount of restitution owed by the parent or for a cancellation of any unpaid portion of the parent's obligation. The court shall cancel all or part of the parent's obligation due if the court determines that payment of the amount due will impose a manifest hardship on the parent. [MCL 712A.30.]

Although the 1996 amendment of § 30 removed the $5,000 monetary limitation on parental liability, it added additional language to reasonably circumscribe the liability imposed. Under subsection 15, restitution may be imposed only on *the parent or parents having supervisory responsibility for the juvenile at the time of*

*the acts upon which an order of restitution is based.*
Further, although there is no statutory limitation on
the amount of restitution, under subsection 16, a
court must consider the parent's financial resources,
the burden of the payment of restitution, and any
other moral or legal financial obligations that the
parent may have. Additionally, the statute mandates
that the court cancel all or part of the parent's
obligation if payment of the amount due will impose
a manifest hardship on the parent. MCL 712A.30(17).

Contrary to appellants' argument, the statute does
not impose liability solely on the basis of familial
relationship. The Legislature has clearly sought to link
*liability* with *responsibility* in a reasonable but purpose-
ful manner, rather than burdening society in general or
the victim in particular for the costs of a juvenile's
illegal acts. The statute reasonably imposes liability on
the parent responsible for supervising the child. In this
case, the court limited appellants' liability to available
insurance proceeds. Appellants have not met their
burden of establishing either that no legitimate public
purpose is served by MCL 712A.30(15) or that there is
no rational relationship between the statute's provi-
sions and a legitimate public purpose. *Ludington &
Northern R Co v Epworth Assembly,* 188 Mich App 25,
43-44; 468 NW2d 884 (1991).

We conclude that the juvenile code provisions for
restitution by a supervisory parent bear a reasonable
relation to a permissible legislative objective, so there is
no violation of appellants' due process rights. *Phillips v
Mirac, Inc.,* 470 Mich 415, 436; 685 NW2d 174 (2004).
The guaranty of due process "demands only that the
law shall not be unreasonable, arbitrary, or capricious,
and that the means selected shall have a real and

substantial relation to the object sought to be attained." *McAvoy v H B Sherman Co,* 401 Mich 419, 435-436; 258 NW2d 414 (1977).

Our conclusion is in keeping with the holdings in other jurisdictions that have considered similar statutes providing restitution for crime victims and have found no due process violation. See, e.g., *In re Kory L,* 194 Ariz 215, 219; 979 P2d 543 (Ariz App, 1999) (holding that a restitution statute is not unconstitutional on the ground that it punishes an innocent party for the crimes of another), *In re Sorrell,* 20 Md App 179; 315 A2d 110 (1974) (holding that a statute imposing strict vicarious liability on parents for damage caused by the willful misconduct of their children is constitutional), and *Bd of Ed of Piscataway Twp v Caffiero,* 86 NJ 308; 431 A2d 799 (1981) (holding that a statute imposing vicarious liability on parents or the guardian of a public school pupil for injuries to school property did not violate due process requirements or equal protection requirements and was, therefore, constitutional). We find the reasoning in *Piscataway* particularly applicable in this case:

> The existence of the parent-child relationship provides a rational basis for imposing liability and is a reasonable means to accomplish the purposes of compensation and deterrence. The United States Supreme Court has recognized that "parents have an important 'guiding role' to play in the upbringing of their children." *H. L. v. Matheson,* [450 US 398, 410; 101 S Ct 1164; 67 L Ed 2d 388] (1981); *Bellotti v. Baird,* [443 US 622, 637-639; 99 S Ct 3035; 61 L Ed 2d 797] (1979). The Legislature could have reasonably believed that subjecting parents to vicarious liability for their children's willful and malicious acts of vandalism would encourage parents to exercise their "guiding role" in the upbringing of their children. Through better parental supervision and guidance, the Legislature hoped to deter delinquent conduct. Our concern is not whether that hope

has been or will be fulfilled but whether there is a rational basis for it. Though we acknowledge the difficulties of being a parent, we cannot say that there is no rational basis for the statute. [*Bd of Ed of Piscataway Twp, supra* at 320.]

C

Appellants' further argue that MCL 712A.30 is an unconstitutional bill of attainder because it punishes parents for their status, not their conduct. We conclude that the restitution obligation imposed on parents offends neither historical nor modern concepts of the bill of attainder prohibition.

The Michigan Legislature is prohibited from enacting bills of attainder. US Const, art I, § 10, cl 1; Const 1963, art 1, § 10. A legislative act that determines guilt and inflicts punishment on an identifiable group of individuals without the protections of a judicial trial is a bill of attainder. *Selective Service Sys v Minnesota Pub Interest Research Group*, 468 US 841, 846-847; 104 S Ct 3348; 82 L Ed 2d 632 (1984); *Matulewicz v Governor*, 174 Mich App 295, 305; 435 NW2d 785 (1989). Historically used in England in times of rebellion or political upheaval, such bills commonly imposed penalties including death, imprisonment, banishment, or the punitive confiscation of property by the sovereign against persons considered disloyal to the crown or state. *Nixon v Administrator of Gen Services*, 433 US 425, 473-474; 97 S Ct 2777; 53 L Ed 2d 867 (1977). In modern applications, the proscription against bills of attainder prohibits such sanctions as legislation barring individuals or groups from participation in specific types of employment or vocation. *Id.* at 474-475.

Appellants' claim necessarily requires that the order of restitution imposed on them be validly characterized as punishment in the constitutional sense. *Matulewicz,*

*supra* at 305. A statutory enactment that imposes deprivations or disabilities that are disproportionately severe and inappropriate to nonpunitive ends is immediately constitutionally suspect. *Nixon, supra* at 473. However, the mere fact that harm is inflicted by the government does not make it punishment; there may be reasons other than punishment for a deprivation. *Id.* at 471 n 32.

A determination whether a statute inflicts forbidden punishment implicates three specific inquiries: (1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, viewed in terms of the type and severity of burdens imposed, reasonably furthers nonpunitive legislative purposes; and (3) whether the legislative record evinces a congressional intent to punish. *Matulewicz, supra* at 306, citing *Selective Service Sys, supra* at 852; see also *Nixon, supra* at 473, 475-476, 478. Applying this analysis, we conclude that the burdens placed on parents by MCL 712A.30 do not make those burdens punishment within the meaning of the proscriptions against bills of attainder.

The challenged statutory provisions for restitution do not fall within the historical meaning of legislative punishment and are not validly characterized as punishment in the constitutional sense. The statutory enactments at issue were designed to protect the rights of crime victims and they underscore the compensatory nature of restitution in Michigan. *Peters, supra* at 524. These laws authorize the payment of restitution because the victims of crimes have suffered significant losses. *Id.* at 523. The fact that a restitution order is intended to cause "financial pain" does not transform the restitution order into a primarily penal sanction. *Id.*

Moreover, the statute furthers nonpunitive legislative purposes. As previously noted, the Legislature's enactments providing for restitution "were intended to enable victims to be compensated fairly for their suffering at the hands of convicted offenders." *Id.* at 526. "The compensatory nature of restitution is . . . specifically designed to allow crime victims to recoup losses suffered as a result of criminal conduct." *People v Grant,* 455 Mich 221, 230; 565 NW2d 389 (1997). Authorizing courts to hold supervisory parents secondarily accountable for restitution not only furthers the goal of making innocent victims whole, but also promotes increased parental supervision in society in general.

The statute incorporates provisions to mitigate any excessive financial burden imposed on parents through protections in subsections 16 and 17. These subsections temper any potentially harsh ramifications of the statute and mandate that a court cancel all or part of the ordered restitution if the order imposes a manifest hardship on the parents. In appellants' case, the court-ordered restitution was to be satisfied solely from proceeds of policies of insurance issued to appellants and not from appellants' personal assets.

Given the above factors, the law must be held to be an act of nonpunitive legislative policymaking. Unless an enactment is punitive in its purpose and effect, there is no bill of attainder. *Selective Service Sys, supra* at 859 (Powell, J, concurring, citing *Nixon, supra* at 472). The statute does not constitute a bill of attainder.

VI

The remaining issue for our consideration is whether the court erred in the amount of restitution awarded. Appellants argue that they were entitled to a directed

verdict or involuntary dismissal at the close of the prosecution's proofs because the prosecutor failed to establish the value of the damaged or destroyed property. We disagree that appellants were entitled to a directed verdict or involuntary dismissal. However, we find error to the extent that the court ordered restitution based on the amount of the loss compensated by SET-SEG, i.e., replacement cost, rather than the actual loss sustained by the school district. We therefore remand for a redetermination of the proper amount of restitution to be imposed.

It is undisputed that the rules of evidence were inapplicable to the hearing in the family division. Accordingly, appellants' argument that the contractor bills and invoices were inadmissible hearsay is without merit.[5] Further, it is beyond dispute that the actual loss sustained by the school was included within the proofs submitted to the trial court. That is, it cannot reasonably be argued that the prosecutor provided no proof whatsoever of damages in this case. Appellants were not entitled to a directed verdict or involuntary dismissal.

To the extent, however, that appellants claim that the statute does not support the award of restitution for replacement value of the property damaged, we agree. In this case, SET-SEG sought restitution under MCL 712A.30(8) on the ground that SET-SEG had paid compensation to the victim, Howell Public Schools, for losses sustained in the fire set by Sean. Subsection 8

---

[5] Appellants' argument is premised on challenged testimony and exhibits presented in the hearings of January 16, 2003, and March 5, 2003; however, the transcripts of these hearings are not included in the record on appeal. This claim is therefore not properly presented for review. *Myers v Jarnac*, 189 Mich App 436, 443-444; 474 NW2d 302 (1991). For the same reason, we decline to address any issues that are not included in appellants' statement of questions presented. *Caldwell v Chapman*, 240 Mich App 124, 132; 610 NW2d 264 (2000).

empowers courts to order restitution to legal entities that have already compensated a victim "for a loss incurred by the victim to the extent of the compensation paid for that loss."

Appellants assert that SET-SEG compensated the victim for more than the actual loss, contrary to the statute, because the insurance policy provided replacement cost coverage. We agree.

The controlling factor with respect to determining the amount of restitution is the victim's loss. See *Law, supra* at 428, (forgone interest is one aspect of the victim's actual loss). Pursuant to MCL 712A.31(1), "In determining the amount of restitution to order under section 30 of this chapter, the court shall consider *the amount of the loss sustained by any victim* as a result of the juvenile offense." (Emphasis added.)

In this case, the victim is the school district, which is the entity that suffered "direct or threatened physical, financial, or emotional harm as a result of the commission of a juvenile offense." MCL 712A.30 (1)(b). SET-SEG is an entity that compensated the victim. Under subsection 8 of § 30, an entity that compensated a victim "for a loss incurred by the victim" is entitled to receive restitution "to the extent of the compensation paid for *that* loss," clearly meaning the loss of the victim, not the loss of the compensating entity. (Emphasis added.)

MCL 712A.30(3) specifically addresses restitution in cases of property damages:

> If a juvenile offense results in damage to or loss or destruction of property of a victim of the juvenile offense, or results in the seizure or impoundment of property of a victim of the juvenile offense, the order of restitution may require that the juvenile do 1 or more of the following, as applicable:

(a) Return the property to the owner of the property or to a person designated by the owner.

(b) If return of the property under subdivision (a) is impossible, impractical, or inadequate, pay an amount equal to the greater of subparagraph (*i*) or (*ii*), less the value, determined as of the date the property is returned, of that property or any part of the property that is returned:

(*i*) The value of the property on the date of the damage, loss, or destruction.

(*ii*) The value of the property on the date of disposition. . . .

Although the directive in this subsection is permissive with regard to the inclusion in an order of restitution, the statutory provisions are nevertheless instructive in discerning legislative intent regarding the calculation of restitution for property damage. Such damage is specified as "[t]he value of the property on the date of the damage, loss, or destruction." 712A.30(3)(b)(*i*).

Reading the statute as a whole, we conclude that the amount of restitution ordered in this case cannot be based on the replacement value of the property damaged. To do so improperly orders restitution for the loss of the compensating entity without regard to the actual loss of the victim. Under the circumstances of the case, the loss of the compensating entity is based on the commercial transaction involved, i.e., the school district's purchase of replacement coverage insurance, rather than the loss resulting from the fire, which underscores that the result is incongruent with the purpose of the statute. Although the amount of restitution is within the discretion of the trial court, the court erred to the extent it ordered restitution to SET-SEG on the basis of the amount SET-SEG compensated the school district, rather than the amount of the actual

loss sustained by the school. Restitution must be based on the value of the property damaged, i.e., the victim's actual loss.

We affirm in part, but vacate the order of restitution and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.