*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* R. E. WHITE, II, Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

Petitioner-Appellee,

v

R. E. WHITE, II,

Respondent-Appellant.

FOR PUBLICATION
November 19, 2019
9:15 a.m.

No. 342771
Oakland Circuit Court
Family Division
LC No. 2015-836585-DL

---

Before: RIORDAN, P.J., and K. F. KELLY and CAMERON, JJ.

K. F. KELLY.

Respondent pleaded no contest and was adjudicated responsible for unlawful driving away of an automobile (UDAA), MCL 750.413, and driving while license suspended, MCL 257.904(1). The trial court entered an order of disposition that placed respondent in Children's Village. After a hearing, respondent was ordered to pay a total of $1,774.25 in restitution. Respondent appeals by leave granted[1] solely challenging the restitution order. We vacate the restitution order and remand for proceedings consistent with this opinion.

## I. BASIC FACTS

On or about January 4, 2017, respondent stole a 2008 Ford Escape belonging to the victim, Christopher Giarmo, from his residence. The police returned Giarmo's vehicle to him five or six days after the theft. Giarmo kept his vehicle in "pristine" condition. When it was returned to him, the contents of the glove box were strewn about the vehicle, the interior smelled

---

[1] *In re R E White, II*, unpublished order of the Court of Appeals, entered August 9, 2018 (Docket No. 342771).

of smoke, the interior was coated in dust because of the police attempt to lift fingerprints, and an extra key fob kept hidden in a false bottom of the vehicle's center console was missing.

After his vehicle was returned, Giarmo paid $154 to have the vehicle professionally cleaned to remove the smell and the fingerprint dust. Additionally, he expended $98.88 to replace his car keys. This cost included the replacement of the electronic key fob that Giarmo had in his possession as well as the hidden key fob that was taken from the vehicle's center console. These new key fobs were the only keys programmed to *electronically* lock, unlock, and start Giarmo's vehicle. However, the missing key could still be used to *physically* lock, unlock, and start his vehicle. In order to prevent an individual from using the missing key to enter, start, and drive the vehicle away, Giarmo obtained an estimate of $1,521.37 to replace his vehicle's locks and ignition. Giarmo's insurance company refused to reimburse for this replacement because the cylinders were not damaged during the theft. Giarmo testified that he did not feel safe with the original key fob still missing.[2] He opined that he could not securely lock items in his vehicle, and someone could unlock the vehicle and lay in wait to prey upon his wife. Giarmo determined that his vehicle had an estimated value of $5500, but he still owed approximately $6,000. Because it was not cost effective to replace the vehicle's locks and ignition in light of the balance owed, Giarmo elected to turn his vehicle in to a dealership and lease a new vehicle. At the restitution hearing, the trial judge ordered respondent to pay $1,774.25 in restitution to Giarmo. This restitution payment included the costs of replacing the key fobs and the professional cleaning that were incurred, but also included the cost of replacing the locks and the ignition that had not been expended. The trial court justified "the additional amount of the $1,521.37 [in restitution] with regard to the cylinder repair that was incurred in the fashion of having to get a new car."

## II. RESTITUTION AND APPLICABLE LAW

"Crime victims have a right to restitution under both the Michigan Constitution and Michigan statutory law." *People v Wahmhoff*, 319 Mich App 264, 269; 900 NW2d 364 (2017). "The purpose of restitution is to allow crime victims to recoup losses suffered as a result of criminal conduct." *People v Newton*, 257 Mich App 61, 68; 665 NW2d 504 (2003) (internal quotation and citation omitted). Restitution is not designed to provide a windfall for crime victims, but was created to ensure that victims are made whole for their losses to the extent possible. *People v Corbin*, 312 Mich App 352, 370; 880 NW2d 2 (2015). The juvenile code, MCL 712A.30 and MCL 712A.31, utilizes the same statutory scheme for restitution that was delineated in the Crime Victim's Rights Act (CVRA), MCL 780.766 and MCL 780.767, and therefore, judicial interpretation of the CVRA may be applied to the corresponding provisions in the juvenile code. *In Re McEvoy*, 267 Mich App 55, 61-63; 704 NW2d 78 (2005).

"An order of restitution is generally reviewed for an abuse of discretion." *Id*. at 59. Although the trial court's calculation of a restitution amount is reviewed for an abuse of discretion, its factual findings are reviewed for clear error. *Corbin*, 312 Mich App at 361. "An

---

[2] On the record, counsel for respondent represented that she inquired if respondent was aware of the location of the missing key fob, but he did not know what happened to it.

abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). "A trial court also necessarily abuses its discretion when it makes an error of law." *People v Al-Shara*, 311 Mich App 560, 566; 876 NW2d 826 (2015). "When the question of restitution involves a matter of statutory interpretation, review de novo applies. Statutory interpretation is a question of law subject to a review de novo." *In re McEvoy*, 267 Mich App at 59. Furthermore, "[i]f the plain and ordinary meaning of the language is clear, judicial construction is normally neither permitted nor necessary. Statutory language should be construed reasonably, keeping in mind the purpose of the act." *Id*. at 59-60 (citations and quotation marks omitted).

Under the juvenile code, MCL 712A.30 and MCL 712A.31, trial courts are authorized to order a juvenile to pay restitution. In relevant part, MCL 712A.30 states:

> (3) If a juvenile offense results in damage to or loss or destruction of property of a victim of the juvenile offense, or results in the seizure or impound of property of a victim of the juvenile offense, the order of restitution may require that the juvenile do 1 or more of the following, as applicable:
>
> > (a) Return the property to the owner of the property or to a person designated by the owner.
> >
> > (b) If return of the property under subdivision (a) is impossible, impractical, or inadequate, pay an amount equal to the greater of subparagraph (*i*) or (*ii*), less the value, determined as of the date the property is returned, of that property or any part of the property that is returned:
> >
> > > (*i*) The value of the property on the date of the damage, loss, or destruction.
> > >
> > > (*ii*) The value of the property on the date of disposition.
> >
> > (c) Pay the costs of the seizure or impoundment, or both.
>
> (4) If a juvenile offense results in physical or psychological injury to a victim, the order of restitution may require that the juvenile do 1 or more of the following, as applicable:
>
> > (a) Pay an amount equal to the cost of actual medical and related professional services and devices relating to physical and psychological care.
> >
> > (b) Pay an amount equal to the cost of actual physical and occupational therapy and rehabilitation.
> >
> > (c) Reimburse the victim or the victim's estate for after-tax income loss suffered by the victim as a result of the juvenile offense.

(d) Pay an amount equal to the cost of psychological and medical treatment for members of the victim's family that has been incurred as a result of the juvenile offense.

In relevant part, MCL 712A.31 states:

(1) In determining the amount of restitution to order under section 30 of this chapter, the court shall consider the amount of the loss sustained by any victim as a result of the juvenile offense. . . .

\* \* \*

(4) Any dispute as to the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the juvenile offense shall be on the prosecuting attorney. . . . [Footnote omitted.]

"The controlling factor with respect to determining the amount of restitution is the victim's loss" and a restitution award premised on the basis of the replacement value of damaged property is improper. *In re McEvoy*, 267 Mich App at 76-78. The statutes governing restitution permit an award for losses that are factually and proximately caused by the offender. *Wahmhoff*, 319 Mich App at 270. The restitution calculation cannot be premised on speculative or conjectural loss, but rather, the evidence must support a reasonably certain factual foundation for the amount. *Id*.

In granting trial courts the authority to order restitution, "the Legislature has clearly manifested an intent to make victims of a crime as whole as they can fairly be made and to leave the determination of how best to do so to the trial court's discretion" on the basis of the evidence presented by petitioner to prove the victim's loss. *People v Gubachy*, 272 Mich App 706, 713; 728 NW2d 891 (2006). When determining the amount of restitution to award a victim, "the focus is consistently not on what a defendant took, but what a victim lost because of the defendant's criminal activity." *Id*. The CVRA bases the value of property lost or damaged on its fair market value, MCL 780.766(3)(b), which this Court has defined as "the amount of money that a ready, willing, and able buyer would pay for the asset on the open market." See *Wolfe-Haddad Estate v Oakland Co*, 272 Mich App 323, 325-326; 725 NW2d 80 (2006).

Furthermore, "[t]here is no requirement that [a respondent] personally benefitted to" the extent of the restitution awarded to the victim, "only that his [or her] criminal acts caused that amount of loss." *People v Lueth*, 253 Mich App 670, 692; 660 NW2d 322 (2002). Thus, compensating a victim for his or her loss encompasses more than simply returning lost or stolen property. Rather, restitution can be awarded for other types of losses, such as compensation for the time it takes employees to take inventory and reequip trucks stolen by a defendant, *Gubachy*, 272 Mich App at 707, 713, lost profits, *People v Cross*, 281 Mich App 737, 738-739; 760 NW2d 314 (2008), or the value of time and resources spent investigating a fraudulent insurance claim, *People v Fawaz*, 299 Mich App 55, 66-67; 829 NW2d 259 (2012). A restitution award can also include interest. *People v Law*, 459 Mich 419, 423-428; 591 NW2d 20 (1999). Such forms of restitution are awarded to make victims as whole as they can be and to fully compensate them for their losses.

## III. APPLICATION TO THE FACTS

Respondent argues that the trial court erred by ordering him to pay $1,521.37 to replace the locks and ignition of Giarmo's vehicle because Giarmo chose not to physically replace his vehicle's locks and ignition.[3] Because the trial court awarded $1,521.37 in restitution as a "fashioned" remedy for Giarmo's lease of a new vehicle and that amount was speculative with regard to the cost of leasing a new vehicle, we agree.

The trial court ordered respondent to pay $1,521.37 in restitution to Giarmo, in part, to compensate Giarmo for leasing a new vehicle on the basis of his feeling unsafe in his vehicle because of its missing key.[4] Specifically, the trial court stated that it was "going to allow the additional amount of the $1,521.37 [in restitution] with regard to the cylinder repair that was incurred in the fashion of having to get a new car." Respondent's actions, however, did not force Giarmo to turn his vehicle in and lease a new vehicle. Rather, Giarmo conducted a cost-benefit analysis of the value of his vehicle and found that it was less than the debt owed without even considering the additional expense of replacing the locks and the ignition. As such, any restitution awarded solely to compensate respondent for leasing his new vehicle was an error of law and an abuse of discretion because it compensated Giarmo for replacing his vehicle, not for its loss in value. See *In re McEvoy*, 267 Mich App at 76-78 (holding that restitution awards should be premised on the loss of value, not the replacement cost).

Respondent argues that the trial court erred by awarding $1,521.37 in restitution to Giarmo because Giarmo did not actually pay to replace the locks and ignition in his vehicle. However, MCL 712A.30(3) and MCL 712A.31(1) and (4), do not consider whether a victim actually pays to return his or her stolen or damaged property to the condition it was in before it was stolen or damaged by a respondent. Rather, MCL 712A.30(3) and MCL 712A.31(1) and (4) only establish that a victim should be compensated for his or her loss on the basis of the evidence presented to the trial court. See MCL 712A.30(3) and MCL 712A.31(1) and (4); *Gubachy*, 272 Mich App at 713. Such compensation follows the Legislature's intent that restitution should put the victim back in the position he or she was in before a respondent caused the loss. See *Gubachy*, 272 Mich App at 713. As such, Giarmo was not required to incur the cost to replace the locks and ignition of his vehicle to obtain an award of restitution for any loss arising out of the missing key.

---

[3] Ultimately, at the restitution hearing and on appeal, respondent did not challenge the cost of replacing the key fobs and the cost of cleaning after it was discovered that the police report disclosed that fingerprinting of the vehicle occurred.

[4] Because petitioner failed to present any evidence that Giarmo received medical or psychological services related to the theft of his vehicle, the disputed amount of the restitution award could not be supported on this ground. See MCL 712A.30(4) (establishing that restitution for psychological injuries is only permitted to compensate a victim for medical and professional services related to psychological care).

The trial court based its restitution award, in part, on the replacement cost. The value of a victim's loss due to damaged property, however, is not based on the cost to repair it or to return it to the condition it was in before the damage. Rather, the value of a victim's loss due to damaged property is based on the decrease in the property's fair market value due to the damage. See MCL 712A.30(3)(b); MCL 780.766(3)(b); *Wolfe-Haddad*, 272 Mich App at 325-326. Petitioner presented evidence that the Kelly Bluebook value of a "pristine" 2008 Ford Escape, like Giarmo's vehicle, was $5,500, but petitioner failed to present evidence showing the fair market value of Giarmo's vehicle when he turned it over to the dealer and whether its fair market value decreased because the missing key could physically unlock and start it. Thus, petitioner failed to meet its burden to show that Giarmo was entitled to $1,521.37 in restitution because the amount was speculative with regard to any reduction in value of his vehicle when turned in to the dealer without replacement of the locks and ignition in exchange for a leased vehicle. As such, Giarmo was not entitled to $1,521.37 in restitution.

Vacated and remanded for correction of the restitution award. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Thomas C. Cameron