**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5041-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SYLVIA WILKERSON,

     Defendant-Appellant.

_____

> Argued September 23, 2021 – Decided October 6, 2021
>
> Before Judges Alvarez and Haas.
>
> On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 17-12-0209-S.
>
> Matthew W. Reisig argued the cause for appellant (Reisig Criminal Defense & DWI Law, LLC, attorneys; Matthew W. Reisig, on the brief).
>
> Steven Cuttonaro, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Steven Cuttonaro, of counsel and on the brief).

PER CURIAM

Defendant Sylvia Wilkerson appeals from the provisions of the June 5, 2019 judgment of conviction requiring her to: (1) pay $272,223.53 in restitution "[a]t a rate of $1,000.00 per month"; and (2) "[o]btain employment" as a condition of probation. We affirm.

On December 12, 2017, a State grand jury returned a three-count indictment charging defendant with second-degree theft by deception, N.J.S.A. 2C:20-4(a) (count one); second-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a) (count two); and fourth-degree forgery, N.J.S.A. 2C:21-1(a)(2). In support of these charges, the State alleged that after defendant's father passed away in September 2004, she stole $109,716 in Social Security benefits, $147,312.37 in Second Injury Fund benefits, and $15,195.16 in Joint Industry Pension Board benefits paid to her deceased father from shortly after his death until the theft was discovered in early 2017. Defendant accomplished the theft by changing the address on her late father's bank account, where the monies were deposited each month, to her own address. Defendant then used an ATM machine to make hundreds of withdrawals from the account. Defendant also submitted "annual recertification form[s]" allegedly prepared by her father attesting that he was still entitled to payments from the victims.

A-5041-18

On July 2, 2018, defendant pled guilty under count one of the indictment to an amended charge of third-degree theft by deception. As part of the negotiated plea agreement, the State stated it would ask the court to: dismiss the two remaining counts of the indictment; sentence defendant to 180 days in jail as a condition of probation; and order her to pay $272,223.53 in restitution. Defendant admitted during the plea colloquy that she was aware she was not entitled to any of the benefits deposited into her father's account after his death.

Defendant did not dispute the total amount of restitution sought by the State, but requested an ability to pay hearing. Judge Mirtha Ospina granted this request and conducted a three-day hearing at which defendant and her forty-eight-year-old son were the only witnesses.

Defendant stated she was then sixty-eight years old and unemployed. She previously worked as an assistant trader in the banking industry and was last employed as a shipping clerk in 2017. After she pled guilty in July 2018, defendant was hired by a staffing company, which rescinded the offer after a criminal background check. Defendant made no further efforts to seek employment.

Defendant testified she had suffered from a number of medical conditions for many years, but the record shows that these conditions are controlled by

3

medications and did not prevent defendant from holding employment in the past. Most recently, defendant had knee surgery to treat injuries sustained in a 2017 car accident. She filed a civil suit in connection with that accident and hoped to receive an award in her favor at some point in the future.[1]

On direct examination, defendant stated her primary sources of income were Social Security retirement benefits of $1372 per month and a monthly $90.25 pension payment. On cross-examination, however, she admitted her son, who was the joint owner with her of the home in which they both lived, also gave her a $1600 "allowance" each month.

Defendant only supplied federal income tax information for one year, 2017. But, based upon her testimony, she had access to approximately $3062 each month. Defendant presented just one month of bank records that showed she had approximately $1400 in her two accounts at the time of the hearing.

As for her monthly expenses, defendant stated that the monthly mortgage on the home was $1398. It is not clear from the record whether her son, as the home's co-owner, paid a portion of that expense. Defendant's average monthly gas and electric bill was approximately $200, and she stated she paid $123 for

---

[1] Defendant's attorney stated at the hearing that "any money that's derived by way of a settlement or verdict [in the personal injury action] would be turned over."

her cellphone, $30 for life insurance, and $80 toward her nominal credit card balances each month.

Significantly, defendant testified she had reduced her monthly budget by over $1000 after the entry of her guilty plea. Previously, defendant paid at least $580 a month for a BMW lease, $300 to $400 for the monthly cost of insurance on the BMW, and $223.42 each month for cable.[2] Thus, defendant had freed up at least $1000 in her budget by the time of the ability to pay hearing.

Defendant testified she no longer had any of the $272,223 she stole from the three institutions. She denied giving these funds to anyone else.

Although defendant initially claimed she had no other sources of income, defendant began receiving regular checks from Progressive Garden State Insurance (Progressive) shortly after she pled guilty to cover income lost as a result of defendant's car accident. Eventually, these checks totaled $10,000. Defendant testified the payments ended in December 2018, but the State produced an additional check Progressive sent to defendant in March 2019.

Defendant's house was valued at $243,700, and she owed $128,965.13 on the mortgage. Defendant stated she applied for a reverse mortgage, but the bank denied her application because she did not "have enough equity" in the property.

---

[2] The cable bill was placed in defendant's son's name after she pled guilty.

A-5041-18

On cross-examination, however, the State produced a record stating the bank denied defendant's application because it was incomplete.

Defendant's son briefly testified at the hearing. He stated he held two jobs and earned $71,000 per year. He also testified that he attempted to obtain a second mortgage in April 2019, but was unable to obtain approval.

Defendant asked that the court order her to pay no more than the amount of her $90.25 pension each month in restitution. The State argued that defendant could afford at least $1000 per month based on her admission that she no longer had the car and cable bills that she had previously been able to pay from the monies available to her.

Following the hearing, Judge Ospina rendered a comprehensive oral opinion and found that defendant had the ability to pay $1000 each month in order to make restitution for the $272,223.53 she admitted stealing from the three victims. Judge Ospina found that defendant's testimony that she lacked the ability to pay more than $90.25 per month was simply not credible in view of the fact that she had previously been able to pay at least $1000 per month for a luxury car, automobile insurance, and cable bills that had now been eliminated from her budget.

6

The judge also determined that defendant and her son's testimony was not credible because they each had an interest in minimizing defendant's assets in an attempt to reduce her obligation. For example, the judge noted that other than producing a month or two of current records, defendant did not supply detailed information for the past six months that might have shed additional light on her true financial status.

The judge further found that defendant incorrectly claimed she was unable to obtain a reverse mortgage to obtain additional funds to pay restitution because she did not have sufficient equity in her home to qualify for this program. However, the evidence revealed defendant had over $100,000 in equity in the home and that her application was denied because she did not complete the required application forms.

Judge Ospina also concluded that defendant demonstrated a lack of good faith by obtaining approximately $10,000 in benefits from Progressive and then either spending or hiding this money instead of saving it in order to make a lump sum payment toward whatever her restitution obligation might be. Defendant's action in dissipating these funds also strengthened the judge's conclusion that defendant likely hid a portion of the $272,223.53 she took from the victims.

A-5041-18

The judge ruled that defendant should pay full restitution in this case of the entire amount taken between the date of her father's death and the discovery of her scheme. The judge acknowledged that defendant was sixty-eight years old and had health issues. However, she also observed that defendant had previously been employed, had obtained a job offer that was rescinded following a criminal background check, and then never sought another position. The judge found that defendant was intelligent and had previously held positions of responsibility. Noting that the probation department would be able to assist defendant in finding an appropriate placement, the judge ordered defendant to obtain employment.

After ruling on defendant's ability to pay restitution, Judge Ospina sentenced defendant to five years of probation and fifty hours of community service. The judge also imposed additional fines and penalties that are not challenged on appeal.

On appeal, defendant presents the following contention:

Point I

THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING A 68-YEAR-OLD UNEMPLOYED DEFENDANT CONVICTED OF THEFT WHO SUFFERS FROM NUMEROUS MEDICAL CONDITIONS TO PAY FULL RESTITUTION IN

THE AMOUNT OF $272,223.53 FOLLOWING A THREE-DAY ABILITY TO PAY HEARING.

The principles governing our review are well established. Pursuant to N.J.S.A. 2C:44-2, a court shall "sentence a defendant to pay restitution . . . if (1) [t]he victim . . . suffered a loss; and (2) [t]he defendant is able to pay or, given a fair opportunity, will be able to pay restitution." N.J.S.A. 2C:44-2(b)(1) and (2). When establishing the restitution amount and repayment schedule, "the court shall take into account all financial resources of the defendant, including the defendant's likely future earnings, and shall set the amount of restitution so as to provide the victim with the fullest compensation for loss that is consistent with the defendant's ability to pay." N.J.S.A. 2C:44-2(c)(2). "If the court decides that . . . restitution is appropriate, the court has the authority to devise an installment plan for payment." State v. Newman, 132 N.J. 159, 171 (1993) (citing N.J.S.A. 2C:46-1(a)).

If "there is a good faith dispute over the amount of the loss or defendant's ability to pay, the trial court[,] as a matter of defendant's due process entitlement, must hold a hearing on the issue, the character of which should be appropriate to the nature of the question presented." State v. Jamiolkoski, 272 N.J. Super. 326, 329 (App. Div. 1994). "Due process is satisfied by affording the defendant a hearing on the amount of restitution . . . and where there is a factual basis in

9

the record to support the court's determination of the amount of restitution." State v. Harris, 70 N.J. 586, 598-99 (1976). "The determination of the amount of restitution [if set in compliance with these principles] should be accepted except in the case of abuse of discretion." Id. at 599 (citations omitted).

A trial court's factual findings following an evidentiary hearing are owed deference by the appellate court "so long as those findings are 'supported by sufficient credible evidence in the record.'" State v. Elders, 192 N.J. 224, 243 (2007) (citing State v. Locurto, 157 N.J. 463, 474 (1999)). Deference should also be given "to those findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Id. at 244 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "A trial court's findings should be disturbed only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" Ibid. (citing Johnson, 42 N.J. at 162).

Applying these principles, we discern no basis for disturbing Judge Ospina's well-reasoned determination that defendant had the ability to pay $1000 per month toward her restitution obligation of $272,223.53. As the judge found, defendant had eliminated over $1000 in expenses for a BMW, the insurance on that vehicle, and a cable bill that she had previously been able to

pay as part of her monthly budget. Thus, these funds were obviously available to assist defendant in compensating the victims for their losses.

In reaching this conclusion, the judge found that defendant's claim that she could only pay $90 per month was simply not credible. In explaining this determination, the judge observed that defendant failed to supply information concerning her complete financial picture, immediately dissipated approximately $10,000 in lost income benefits that Progressive paid defendant after her guilty plea, and provided incorrect information concerning the reason for the denial of her reverse mortgage information. We defer to the judge's credibility findings on these points. Locurto, 157 N.J. at 474.

Contrary to defendant's contentions on appeal, Judge Ospina fully considered defendant's age and health in setting the amount of restitution and ordering her to obtain employment as a condition of probation. As stated above, defendant is able to pay $1000 per month in restitution from her current sources of income. Moreover, the record fully supports the judge's conclusion that defendant's health issues were of a long-standing nature and had not prevented her from securing and holding employment in the past. In addition, the judge directed the probation department to assist defendant in her job search.

11

In sum, the judge did not misapply her discretion by requiring defendant to pay restitution in monthly installments. Therefore, we affirm the June 5, 2019 order substantially for the reasons set forth by Judge Ospina in her oral decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5041-18